Case No. 15-2128

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Daniel Ericksen,
Plaintiff/Appellant,

v.

J. Doe #1, et al.,
Defendants/Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF MICHIGAN

APPELLANT'S MOTION FOR PROTECTIVE ORDER,
LEGAL ARGUMENT IN SUPPORT, AND CERTIFICATE
OF SERVICE

Michael Ericksen (MI Bar, P40385)
8376 Huntington Road
Huntington Woods, MI 48070
248-217-9705
mlericksen@yahoo.com
Attorney for Appellant


Brandon C. Helms (IL Bar, No. 6394316)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
313-226-9153, 313-226-9639
brandon.helms@usdoj.gov
Attorney for Appellees

## Motion

In support of this motion, Appellant alleges as follows:

(1) Appellant commenced this action with a Complaint filed in the Eastern District of Michigan on January 12, 2015. The case was assigned to district judge George Caram Steeh.

(2) The Complaint alleges that CBP officers at the Blue Water Bridge routinely subject turnaround motorists who are not suspected of wrongdoing to a vehicle inspection.

(3) The Complaint alleges that the practice described in paragraph (2) above is unconstitutional.

(4) The Complaint alleges that on June 22, 2012, Appellant's vehicle was subjected to a search as described in paragraph (2) above.

(5) The search led to misdemeanor criminal charges being brought in 72nd District Court against Appellant by the City of Port Huron.

(6) Appellant was 19 years old on June 22, 2012.

(7) On June 26, 2015, 72nd District Court Judge John D. Monaghan entered an order that assigned Appellant to the status of youthful trainee under the Holmes Youthful Trainee Act, MCL §762.11 *et seq*.

(8) Pursuant to Judge Monaghan's order, the criminal proceedings against Appellant are inaccessible to the general public.

(9) On July 1, 2015, Judge Steeh entered an order granting Appellees' motion to dismiss this case.

(10)   Appellant filed a motion for a protective order on July 31, 2015, asking that Judge Steeh edit the dismissal order so as not to identify Appellant, and that all court documents not edited in like fashion be sealed. Appellant sought this relief so that, consistent with the intent of Judge Monaghan's HYTA order, the fact of the misdemeanor drug-related charges would not be public information.

(11)   Judge Steeh denied the motion for a protective order on September 1, 2015.

(12)   On September 15, 2015, Appellant filed a motion asking Judge Steeh to reconsider the order denying his request for anonymity.

(13)   On September 21, 2015, Appellant filed a notice of appeal to this Court.  The appeal is from both the dismissal order (including the accompanying judgment and Judge Steeh's denial of Appellant's motion to Alter/Amend that order) and the order denying Appellant's motion for a protective order.

(14)   On September 22, 2015, Judge Steeh denied the motion to reconsider.

(15)   On September 24, 2015, Appellant amended the notice of appeal to include appeal to this Court from Judge Steeh's denial of the motion to reconsider.

(16)   This Court has the authority to prohibit public access to any documents in the appellate record that disclose Appellant's identity.

(17)   If the Court affirms Judge Steeh's order denying the motion for a protective order, the relief described in paragraph (16) above would promote the rehabilitative objective of the Holmes Youthful Trainee Act notwithstanding Appellant's lack of anonymity at the lower-court level.

(18)   The relief described in paragraph (16) above would not significantly undermine any legitimate public or governmental interest, as allowance could be made for public access to appellate-record documents – including the Court's ruling on the dismissal order – which do not disclose Appellant's identity.

(19)   The relief described in paragraph (16) above would not adversely affect Appellees' substantive or procedural rights.

Appellant therefore asks that the Court prohibit non-party access to any documents in this appellate case, and related case no. 15-2166, which identify Appellant by name.

January 7, 2016                                          /s/ Michael Ericksen (P40385)

Attorney for Appellant

## Legal Argument

This Court has the authority, upon a showing of "good cause," to "limit or prohibit a nonparty's remote electronic access" to Court documents. FRCP 5.2.(e)(2) (incorporated by FRAP 25(a)(5)). *Compare In re Knoxville News-Sentinel*, 723 F.2d 470, 473 (6th Cir. 1983) (All courts have the "supervisory power" to control the extent to which the public may access "its own records and files." (citation omitted)); *Campbell v. Ethex Corp*., 464 F.Supp.2d 559, 561 (W.D. Va. 2006) ("[W]hether to grant or restrict access to judicial records or documents is a matter of a district court's supervisory power . . . ." (citation omitted)). As will be explained, Appellant believes that good cause exists for sealing the appellate record in this case.

Criminal defendants in Michigan aged 17 to 23 are potentially eligible for designation as a "youthful trainee" pursuant to the Holmes Youthful Trainee Act ("HYTA"), MCL §762.11 *et seq*. If the trainee satisfies applicable requirements, then "all proceedings regarding the disposition of the criminal charge" are to be "closed to public inspection." MCL §762.14(4). HYTA is "remedial legislation" reflecting "a legislative desire that persons in this age group not be stigmatized with criminal records for unreflective and immature acts." *People v. Perkins*, 107 Mich. App. 440, 444 (1981) (*per curiam*).

In the related criminal proceeding, Appellant was designated a youthful trainee and, pursuant to HYTA and an order issued by 72nd District Court Judge John D. Monaghan, the criminal-court proceedings have now been sealed. Monaghan Order [R29-2], Page ID 401.

The rehabilitative purpose of HYTA would be undermined if the general public is able to obtain information regarding Appellant's criminal prosecution from documents filed on appeal in this civil action. Sealing the civil appellate record would help to prevent prospective employers and others from gaining access to information that they are barred from accessing directly. Such access could have significant adverse consequences for Appellant, on both an economic level and in terms of general social standing. *Compare, e.g, Nixon v. Warner Commn's*, 435 U.S. 589, 598 (1978) (Denial of public access to court documents may be appropriate to prevent "harm [to] a litigant's competitive standing."); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (The "infamy associated with criminal behavior" is a factor militating in favor of allowing anonymity. (citation omitted)); *United States v. Smoot*, 1991 WL 85251, at *1 (6th Cir. May 21, 1991) (unpublished) ("The Ohio statute attempts to minimize the stigma associated with a minor misdemeanor drug abuse conviction involving a small amount of marijuana by providing that a defendant arrested or convicted of such charges need not reveal the arrest or conviction when asked if he or she has a criminal record.");

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983) ("[A] court should . . . seal [judicial] records [if] . . . public access would reveal legitimate trade secrets."); *Campbell*, 464 F.Supp.2d at 561 (Courts may seal court records in an effort to protect a business's competitive advantage.).[1]  Granting the relief requested by Appellant would therefore be in keeping with the broader federal policy of not "unduly interfer[ing] with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44 (1971).  *Compare, e.g., United States v. One Parcel of Property*, 930 F.2d 139, 141 (2nd Cir.1991) (*per curiam*) ("[A]s a matter of comity federal courts accord deference to state-created privileges . . . [unless the privilege is] outweighed by a federal interest in presenting relevant information to a trier of fact . . . ."); *United States v. King*, 73 FRD 103, 105 (E.D. N.Y. 1976) ("A strong policy of comity between state and federal sovereignties

---

[1] When court records are sealed to protect corporate profits, the public may be deprived of information which in part forms the basis for a judicial ruling. *E.g., Baxter Int'l v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002)  The public has a significantly diminished interest in the disclosure of information which – like Appellant's identity – has no bearing on a the court's decision. *E.g., United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("An adjudication is a formal act of government, *the basis of which should*, absent exceptional circumstances, *be subject to public scrutiny*." (emphasis added; citation omitted)); *id.* at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of public access] is low . . . ."); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co*, 529 F.Supp 866, 901 (E.D. Pa. 1981) ("[C]ourts have an obligation to explain their decisions that is correlative to the public's common law access rights . . . ." (footnote omitted)).

impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.").

The relief sought in this motion would not be rendered futile by continued public disclosure of Appellant's identity in federal district-court records.[2] This is so because the Court's ruling on the constitutional issues will almost certainly have the effect of eclipsing in significance Judge Steeh's dismissal order: Few members of the general public are likely to inquire into this case beyond the 4 corners of the Court's ruling.

Appellate-level anonymity would be especially important if the Court were to hold that the border-search exception does *not* require international travel. That ruling would amount to rejection of this Court's previous assumption that domestic flights are outside the exception's scope, and create a circuit split on that issue. *See* Appellant's Brief at 22-30. An emboldened CBP might begin conducting random "border searches" on vehicles in near-border regions and at international airports. *See id*.; *compare id.* at 33-37. The high-profile nature of such a landmark

---

[2]This motion would be rendered moot, on the other hand, if the Court reverses Judge Steeh's denial of Appellant's motion to protect and, in connection with that ruling, extends anonymity to the appellate record. *Compare* 6th Cir Rule 25(h)(5). That outcome would of course be preferable from Appellant's perspective because it would reduce the identity-disclosure risk to the fullest possible extent.

decision would inevitably undermine the effectiveness of Judge Monaghan's HYTA order.[3]

This Court has suggested that requests for anonymity by people who have filed a lawsuit "challeng[ing] governmental activity" should be looked upon with favor. *Porter*, 370 F.3d at 560. *See also, e.g., EW v. New York Blood Center*, 213 FRD 108, 111 (E.D. N.Y. 2003) ("[W]here a plaintiff attacks governmental activity, . . . the plaintiff's interest in proceeding anonymously is considered particularly strong."). That is in substance what Appellant is doing in this *Bivens* action, as evidenced by the fact that the U.S. Department of Justice has undertaken Appellees' representation. *See also* Order Denying Motion for Protective Order [R33] at Page ID 433 (wherein Judge Steeh acknowledges that Appellant is challenging the validity of governmental conduct); Complaint [R1] at Page ID 25-26, ¶¶ 169-74.

Given the circumstances of this case, it is especially important that the assertion of constitutional rights not be discouraged. As alleged by Appellant, the TCP subjects dozens of non-border-crossing motorists each and every day to a

---

[3]Reaffirmation by the Court of the principle that the border-search exception is limited to international travel would in contrast be of minimal legal significance. But it would have obvious *practical* implications with regard to CBP operations at the Blue Water Bridge. It therefore is plausible that a decision reversing Judge Steeh's ruling on that point would generate local attention in both legal circles and in terms of news coverage.

suspicionless vehicle search. *See id.* at Page ID 16-17, ¶¶ 95-102. The constitutional validity of this practice is therefore a matter of some concern for the general public – and particularly for persons residing/traveling in the vicinity of the Blue Water Bridge. Yet the searches are unlikely to be challenged in court for a number of reasons:

> (1) Few motorists would be willing to invest the time, energy, and money required to contest the validity of the search in federal court – particularly in the many cases where the search comes up empty;
> (2) Neither motorists nor attorneys have a strong incentive to file a *Bivens* case because it doesn't involve the type of egregious conduct (*e.g.* physical brutality, extensive jail time) that is most likely to result in a large award for damages;
> (3) In cases where the suspicionless search results in prosecution, substantial pressure to accept a plea bargain operates as a disincentive to challenging the admissibility of evidence;
> (4) The risk of judicial bias at the local level is elevated, given the extensive financial assistance received on a regular basis by local government from DHS, and the substantial revenue generated by the TCP for local municipalities[4];

---

[4]In the first iteration of the criminal case against Appellant (prior to the first of two prosecution-requested dismissals without prejudice), Judge Platzer – sitting in Port Huron -- *completely ignored* Appellant's suppression motion, and set an expedited trial date. Her order denying a subsequent version of the suppression motion is spectacularly incompetent, as is the order affirming it issued by Judge West – also sitting in Port Huron. *See* Proposed Sur-Reply [R22-1] at Page ID 312-22; Proposed Supplemental Sur-Reply [R23-3] at Page ID 336-41; *see generally People v. Zavalnitskiy*, 2011 WL 475192, at *12 (Mich. Ct. of App., Feb. 10, 2011) (unpublished; *per curiam*) (suggesting that a judicial decision evinces bias if it is outside the "range of reasonable and principled outcomes"). In late 2011, the Port Huron Fire Department was given $279,000 by DHS. http://candicemiller.house.gov/media-center/press-releases/miller-dhs-grant-awarded-to-port-huron-fire-department. As part of his plea agreement, which of course precluded an appeal from Judge West's order, Appellant was required to

> (5) Criminal defense attorneys, like the local municipalities, also profit from the TCP, and may therefore be disinclined to challenge it – particularly since doing so could antagonize judges before whom the attorney may appear on a regular basis.

In short, there are already plenty of potential obstacles which may protect rogue CBP officers from having to account for their actions. There is no good reason why disclosure of an otherwise concealed criminal record should be added to this list. *See generally, e.g., Doe v. Provident Life & Accident Ins.*, 176 FRD 464, 467 (E.D. Pa. 1997) ("[T]he public may have a strong interest in protecting the privacy of plaintiffs in controversial cases so that these plaintiffs are not discouraged from asserting their claims."); *Doe v. Tandeske*, 2003 WL 24085314, at *2 (D. Alaska Dec. 5, 2003) (unpublished) (noting the "risk that if" persons like the plaintiff, who was challenging the constitutionality of a state statute, "are not allowed to proceed anonymously, no one will litigate issues which are clearly of public importance"); *cf., e,g,, Doe v. Kolko*, 242 FRD 193, 195 (E.D. N.Y. 2006) ([T]he public generally has a strong interest in protecting the identities of sexual

---

pay a $300.00 fine. *See* Monaghan Order [R29-2] at Page ID 401. Port Huron police officer Rumley testified that he *personally* had made as many as 50 calls to the Blue Water Bridge in response to CBP arrests. Complaint [R1] at Page ID 16, ¶ 99. Constitutional challenges brought against DHS personnel also tend to be viewed as unpatriotic. *Compare* Dismissal Order [R25] at Page ID 349-50 (CBP is "charged with interdicting those individuals seeking to . . . harm Americans." The relief sought by Appellant would "undermine[ ]" CBP in the performance of its "herculean . . . task.").

assault victims so that other victims will not be deterred from reporting such crimes.").

Another consideration militating in Appellant's favor is his age. He was still a teenager on the day of the vehicle search. Thus from a legal standpoint, he was not even sufficiently mature to purchase alcohol. Mich. Const. Art IV, §40 (1963). And of course HYTA itself reflects a legislative judgment that 19-year-olds are less likely to choose wisely than persons with more life experience. *See Perkins*, 107 Mich. App. at 444 (quoted *supra* p. 5). That conclusion, the validity of which courts can take judicial notice, is supported by legislation in other jurisdictions. *See, e.g., United States v. Driskell*, 277 F.3d 150, 154-56 (2nd Cir. 2002) ("The New York youthful offender statutory scheme" allows for a judicial determination "that the interest of justice would be served by relieving the eligible youth from the onus of a criminal record . . . . [T]he statute . . . require[es], subject to certain exceptions, that the official records and papers be sealed. . . . [T]hese provisions emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals." (citations & internal quotation marks omitted).

Courts have in this context taken into consideration whether anonymity for one party would "prejudice . . . the opposing party." *Kolko*, 242 FRD at 195

(citation omitted). Appellees are of course aware of Appellant's identity, and they cannot credibly claim to be adversely affected by shielding that information from the general public.[5] *See, e.g., id*. at 198 ("Importantly, defendants do not identify how their ability to conduct discovery or impeach plaintiff's credibility has been impaired if he is permitted to proceed under a pseudonym. . . . Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers. Indeed, *defendants already know plaintiff's true identity*." (emphasis added)); *cf. Roe v. Aware Woman Center for Choice*, 253 F.3d 678, 687 (11th Cir. 2001) (Since plaintiff has "offer[ed] to disclose her name to the defendants for discovery purposes," they would not be disadvantaged by permitting her to "proceed anonymously.").

Nor are there strong countervailing federal interests that would be compromised by attempting to maximize the effectiveness of HYTA and Judge

---

[5]In opposing Appellant's lower-court motion for a protective order, Appellees argued that (1) it would be unfair not to also give them anonymity; and (2) documents redacted to conceal Appellant's identity would thereby be rendered incomprehensible. *See* Response [R31] at Page ID 414-16. The latter argument is frivolous, and Judge Steeh rejected it. Order Denying Motion for Protective Order [R33] at Page ID 435; *see also* Reply [R32] at Page ID 419-21 (explaining why the argument is silly, although no explanation should be required). The fairness argument fails because disclosure of Appellees' identity wouldn't undermine a HYTA order, or discourage persons from challenging governmental conduct. *Id*. at Page ID 423.

Monaghan's order. Until quite recently, in fact, provisions under federal law were closely analogous to HYTA. *See Doe v. Webster*, 606 F.2d 1226, 1234-35 (D.C. Cir. 1979) (The "primary concern" underlying the Federal Youth Corrections Act, 18 USC §§ 5005 *et seq*. [repealed], "was that rehabilitated youth offenders be spared the . . . pervasive social stigma and loss of economic opportunity that in this society accompany the 'ex con' label. . . . . [Congress] intended to give youthful ex-offenders a fresh start, free from the stain of a criminal conviction, and an opportunity to clean their slates to afford them a second chance, in terms of both jobs and standing in the community.").

With respect to persons less than 21 years of age arrested and federally charged for other than a violent felony, Congress has now given U.S. district attorneys discretion to forego prosecution and "surrender" the suspect to state authorities. 18 USC §5001. Thus current federal policy is to allow for deferral to state law in the prosecution of youthful offenders. *See id*. (Custody of the "juvenile" is relinquished to the state so that he or she can be "deal[t] with . . . according to the laws of such State."). So while federal law may no longer reflect a "pro HYTA" mindset, Congress has expressed no categorical opposition to such remedial legislation. *Compare In re Gault*, 387 U.S. 1, 25 (1967) ("[T]here is no reason why . . . a State cannot . . . provide . . . for the confidentiality of records of . . . court action relating to juveniles." (*quoted in United States v. Three Juveniles*,

61 F.3d 86, 89 (1st Cir. 1995)); *Three Juveniles*, 61 F.3d at 86-87, 90 n.4 (rejecting the Globe Newspaper Company's challenge of a district-court ruling that denied public access to proceedings against juvenile defendants accused of "hate crimes," and referring to the "long, entrenched, and well-founded tradition of confidentiality regarding juvenile proceedings, and *the compelling rehabilitative purposes behind this tradition*" (emphasis added)).  And in Appellant's case, the matter didn't even reach the low level of federal involvement contemplated in 18 USC §5001, as federal authorities declined to charge him with an offense.  Complaint [R1] at Page ID 51, ¶ 350. Thus the executive branch disclaimed any interest even in *whether* Appellant was prosecuted, much less in the prosecution's outcome.

    Granting anonymity to Appellant would not have a serious impact on the public's right to know.  That right is certainly compelling insofar as CBP is alleged to be systematically searching scores of non-border-crossing vehicles every week at the Blue Water Bridge.  It is also important that the public be made aware of the allegation that the TCP is a *de facto* joint operation between CBP and local law enforcement.  The public has a right to know that the constitutionality of the TCP has been challenged in federal court, as well as the facts which prompted the challenge. Most important of all, the public has a strong interest in knowing this Court's ruling on the legal issues, and the rationale for the ruling.  *See supra* p. 7 n.1).

In comparison to the foregoing aspects of the case, however, Appellant's *name* is of miniscule importance – something which would be of only passing interest to the general public. *See generally, e.g., Provident Life*, 176 FRD at 466 ("[N]othing in the [Federal] Rules [of Civil Procedure] or the Advisory Committee Notes to the Rules indicates that the drafters were attempting to promulgate a rule that neither a civil defendant nor civil plaintiff ever could proceed in pseudonym."). To illustrate this point, consider the famous/infamous decision of *Roe v. Wade*, 410 U.S. 113 (1973). It would be absurd to claim that the non-disclosure of the plaintiff's identity in that case deprived the public of important information: What *really* mattered was the substance of the Supreme Court's decision, and the Court's rationale. *See Provident Life*, 176 FRD at 467-68 (Anonymity is less disfavored in cases of a "purely legal nature" in which there is "*an atypically weak public interest in knowing the litigant's identities*[. sic]" (emphasis added)); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("The public right to scrutinize governmental functioning . . . is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. *Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost* when one party's cause is pursued under a fictitious name. *These crucial interests* served by open trials . . . *are not inevitably compromised by*

*allowing a party to proceed anonymously*." (emphasis added)); *Tandeske*, 2003 WL 24085314 at *2 (Anonymity is permissible because "[t]he subject matter is . . . the constitutionality of a statue. Doe's status is of significance, but *his identity is not of significance to the case. The public's principal interest is in the constitutional issue to be decided.*" (emphasis added)); *Fross v. County of Allegheny*, 2008 WL 4610290, at *2 (W.D. Pa. Oct. 16, 2008) (unpublished) ("To the extent there is a public interest in this case, it is, or should be, focused on the legal issues raised, and not the individuals bringing it."); *compare Porter*, 370 F.3d at 559-61 (wherein this Court affirmed a district court's ruling that allowed the plaintiffs to proceed anonymously, without once mentioning a right of the public to know their names); *Malizia v. U.S. Dep't of Justice*, 519 F.Supp. 338, 349 (S.D. N.Y. 1981) ("[W]hile the right of privacy of these [FBI and DEA agents] . . . is perhaps minimal, the public interest in identifying them [pursuant to a request made under the Freedom of Information Act, 5 USC §552] is even less." (footnote omitted)).[6] Surely the public interest served by a policy of disclosing a *Bivens*

---

[6] Judge Steeh implicitly recognized that party names are of minimal importance in his dismissal order, which *discloses none of the appellees' names*. *See* Dismissal Order [R25] at Page ID 342-53. That order has been published in Westlaw and perhaps other electronic media – a fact which distinguishes it from all other district-court documents in the case. So to the extent the general public has to date learned of the lawsuit, Westlaw or other such media will overwhelmingly be their source. Indeed, that's the whole point of publication: It's unlikely that more than a very few people among the general public have accessed additional district-court documents via PACER and its paywall. Thus if Judge Steeh thought

plaintiff's name is less robust than the public interest served by a policy of encouraging (or at least not discouraging) such actions. *See supra* pp. 9-12; *see generally, e.g., Carlson v. Green*, 446 U.S. 14, 21 (1980) ("[T]he *Bivens* remedy, in addition to compensating victims, serves a deterrence purpose.").

Some courts have described as a relevant consideration "the extent to which the identity of the litigant has been kept confidential." *Provident Life*, 176 FRD at 467. At least one concern underlying this consideration appears to be undue delay in seeking anonymity. *See id.* at 468 (". . . Doe took steps from the beginning of this case to maintain anonymity."). Appellant disputes the validity of that concern absent evidence that the party opposing anonymity has been prejudiced by the perceived delay. The Appellees can make no such claim in this case.

In any event, there has been no significant delay here. Judge Monaghan's order, which placed Appellant on one month of "non-reporting probation," was entered on June 26, 2105. Monaghan Order [R29-2] at Page ID 401. *Compare* MCL §762.12(1) (The court which assigns an "individual to the status of a

---

it was highly important that the public know Appellees' names, he presumably would have obliged by providing that information in the dismissal order, rather than making people pay to get it. His not having done so suggests that he (correctly) regarded the information as nonessential. And if the names of identification-wearing *public employees* accused of routinely and repeatedly violating the Fourth Amendment aren't particularly important, the same should certainly be true of the private individual making the accusation.

youthful trainee" may "revoke that status any time before the individual's final release.") *with* MCL §762.12(2) (identifying certain offenses committed "during the period of assignment" which would make revocation mandatory) *and with* MCL §762.14(1), (4) (indicating that if the court doesn't terminate/revoke youthful-trainee status pursuant to MCL §762.12, the defendant is "final[ly] release[d]" from such status, and the "proceedings" brought against him are thereupon "closed to public inspection"). Appellant's original motion for a protective order [R29] was filed in the Eastern District of Michigan on July 31, 2015, less than one week after state-court proceedings were sealed pursuant to HYTA and Judge Monaghan's order.

Nor is this a situation in which, owing to Appellant's lack of anonymity to date, the relief sought would be pointless. Unsurprisingly, the misdemeanor criminal case against Appellant received no attention from the news media – a fact which itself militates in favor of his Appellant's request for anonymity. *See, e.g., Rossbach v. Rundle*, 128 F. Supp.2d 1348, 1353 (S.D. Fla. 2000) (according "due deference . . . to the public's right to . . . *newsworthy* information" (emphasis added)).[7]

---

[7]The absence of media coverage can't be attributed to lack of opportunity: The criminal case against Appellant was public information for more than *three years* before being sealed. This extended period of full access further weakens the already attenuated claim of a public right to know Appellant's name.

Finally, granting the relief requested would have no detrimental effect on any significant public interest, because the Court's ruling on the merits (with Appellant's identity concealed) would be publically accessible.  Redacted versions of other appellate filings could likewise be made public, if the Court or any party believes that that would be beneficial.  *Compare* Proposed Order Granting Motion to Protect [R29-4] at Page ID 404-05.

Based on the foregoing, Appellant asks that the Court enter an order which prohibits non-parties from accessing appellate-court documents in this case and related case no. 15-2166 other than those which conceal his identity.  In the alternative, Appellant asks that his identity not be disclosed in the Court's order/opinion addressing the merits of this appeal.[8]

January 7, 2016                                          /s/ Michael Ericksen (P40385)
                                                                          Attorney for Appellant

### Certificate of Service

I certify that on January 7, 2016, I electronically filed this document with the Clerk of Court using the ECF system, which will send notice of the filing to Appellees' counsel.

January 7, 2016                                          /s/ Michael Ericksen (P40385)

---

[8] As noted earlier, Judge Steeh's dismissal order does not identify Appellees.  This unsolicited omission accorded them a *substantial* degree of anonymity.  *See supra* p. 17 n.6. Providing the same relative anonymity for Appellant vis-à-vis the Court's ruling on appeal would reduce the risk of sabotaging Judge Monaghan's HYTA order.  *See supra* pp. 8-9, 19.